

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-1996

# Angst v. Royal MacCabees Life Ins. Co.

Precedential or Non-Precedential:

Docket 95-1555

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Angst v. Royal MacCabees Life Ins. Co." (1996). *1996 Decisions*. Paper 237.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1555


ROBERT ANGST,
                    Appellant

                 v.

ROYAL MACCABEES LIFE INSURANCE COMPANY;
FEDERAL KEMPER LIFE ASSURANCE COMPANY;
DAVID J. SCHILLER, ESQUIRE, Intervenor in D.C.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 95-06858)


Submitted under Third Circuit LAR 34.1(a)
on January 30, 1996

Before:  GREENBERG and NYGAARD, Circuit Judges and
         LAY, Senior Circuit Judge*

(Filed:  February 20, 1996)


OPINION OF THE COURT




* Honorable Donald P. Lay, United States Senior Circuit Judge for
the Eighth Circuit Court of Appeals, sitting by designation.


1

NYGAARD, <u>Circuit Judge</u>.

Robert Angst appeals from an order dismissing his case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). For the reasons below, we will affirm the decision of the district court.

I.

Angst, a Pennsylvania citizen, sued Royal Maccabees Life Insurance Company and Federal Kemper Life Assurance Company. For diversity purposes, Royal is a citizen of the state of Michigan and Kemper is a citizen of the state of Illinois. Royal and Kemper each issued an insurance policy in which Angst is the contingent beneficiary. Angst alleged that he is entitled to proceeds from both policies, but that, in violation of their respective insurance agreements, the defendants have refused to pay.

The policies at issue were purchased by Appellant Robert Angst's brother, Thomas Angst. The Royal policy was issued on Thomas Angst's life, and the Kemper policy was issued on the life of Cynthia Papanikos-Angst, Thomas Angst's wife. Each spouse had named the other as the primary beneficiary and Robert Angst as the alternate beneficiary. Thomas Angst killed his wife and his son, then took his own life. Robert Angst believes that he is entitled to the proceeds of both policies.

II.

On October 14, 1994, Appellee David J. Schiller was appointed as the receiver for Thomas E. Angst & Associates, P.C.,

2

the deceased's law practice, by the Court of Common Pleas of Montgomery County. By orders dated November 7 and 14, 1994, the Court of Common Pleas ordered Royal to pay the proceeds of Thomas Angst's policy into escrow. Robert Angst sought a dissolution of these orders, which the state court denied.

On November 15, 1994 (the day after Robert Angst filed his complaint in federal court), Schiller filed a complaint in the Court of Common Pleas against Royal, Kemper and Robert Angst seeking to have a constructive trust imposed on the proceeds of the two insurance policies. He alleged that the life insurance policies were purchased with funds misappropriated from the escrow accounts of Thomas Angst's clients. He further alleged that Robert Angst would be unjustly enriched if he were permitted to receive the proceeds of the two policies, and that the proceeds belonged to certain of the law firm's creditors.

Schiller filed a motion to intervene in the federal action. The district court held a hearing on February 13, 1995, after which it orally granted the motion.[1] As a result of the receiver's intervention, the court realigned the parties according to their interests in the litigation. It rejected Robert Angst's argument that the action constituted a Rule 22 interpleader in which the insurance companies would be the

---

[1] Cynthia Papanikos–Angst's father, Konstantinos Papanikos filed motions to intervene and to dismiss the action. Robert Angst filed a motion for injunctive relief in the district court. He essentially asked that Schiller be enjoined from pursuing his action in the state courts.

3

stakeholders and Angst and Schiller the claimants.[2]  Instead, the court determined that Angst and Schiller were "the true opposing parties" in the action.  Because they are both citizens of Pennsylvania, diversity of citizenship was destroyed and the court dismissed the case for lack of subject matter jurisdiction.

### III.

Angst does not dispute the propriety of Schiller's intervention.  Rather, he asserts that the district court should have realigned the parties to reflect a Rule 22 interpleader action.  We exercise plenary review over a district court's alignment of the parties with respect to diversity jurisdiction. Employers Ins. of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864 (3d Cir. 1991).

### A. Alignment of the Parties

Angst relies primarily upon Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc., 199 F.2d 694 (3d Cir. 1952), to demonstrate that his situation would properly be construed as an interpleader.  He also cites several other cases to support the position that the federal courts have uniformly held that where a stakeholder is diverse from its claimants, diversity is satisfied under 28 U.S.C. § 1332, regardless of the citizenship of the claimants.

---

[2] Rule 22 provides that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . ." Fed. R. Civ. P. 22(1).

4

Nonetheless, whether a Rule 22 interpleader requires minimal or complete diversity is not the issue here. It appears to be well-settled that diversity between the stakeholder and claimants is sufficient to confer federal jurisdiction if the amount in controversy is met. See Kerrigan's Estate, 199 F.2d at 696; 7 Charles A. Wright et al., Federal Practice and Procedure § 1710 (1986). The dispute here concerns the proper alignment of the parties according to their interests.

In City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S. Ct. 15 (1941), the U.S. Supreme Court stated that the positioning of the parties for purposes of diversity "must be ascertained from the 'principal purpose of the suit,' . . . and the 'primary and controlling matter in dispute.'" 314 U.S. at 68 (citations omitted). We have reaffirmed that the correct inquiry turns not on some artificial position, but the "principal purpose" of the action: "[A] court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue." Wausau, 942 F.2d at 864.

To identify the primary issue, we must first look to the pleadings submitted by the parties. Id. at 866. We also have a duty to look beyond the pleadings to determine the actual interests of the parties. Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156 (3d Cir. 1995). In this case, Angst's complaint indicates that he seeks to compel the insurance companies to pay him benefits to which he believes he is entitled. If Angst's complaint were the only pleading guiding

5

the "principal purpose" analysis, then an interpleader alignment might be proper. As the cases cited by Angst indicate, an interpleader structure is often used in cases involving disinterested insurance companies and claimants asserting entitlement to insurance proceeds. See, e.g., Aetna Life and Casualty Co. v. Spain, 556 F.2d 747 (5th Cir. 1977); John Hancock Mutual Life Insurance Co. v. Kraft, 200 F.2d 952 (2d Cir. 1953). Nonetheless, we must also take into consideration the receiver's motion to intervene, together with the circumstances surrounding the case.

Unlike the cases cited by Angst, in which the primary issue concerned which claimant was the intended beneficiary of the policy, in this case Schiller does not dispute that Angst is the correct beneficiary. Rather, Schiller seeks to have a constructive trust placed on the proceeds once they are received by Angst. Schiller's motion to intervene and state court complaint indicate that the only issue he raises is whether appellant should be allowed to keep the proceeds despite the fact that he might be the named alternate beneficiary under the contract. As such, the "principal purpose" of the litigation is not simply to determine who is entitled to the benefits under the contract, but whether appellant's potential entitlement to them can be upheld in equity. It is for this reason that Schiller intervened in the action, to which appellant did not and does not object.

Therefore, Kerrigan's Estate does not support appellant's argument. In that case, this Court let stand the district

6

court's exercise of federal diversity jurisdiction in a suit between an executor of an estate and a relative of the deceased, both Pennsylvania residents, who claimed an entitlement to proceeds from a contract.  However, the two parties had agreed that they would be disinterested stakeholders in an interpleader action and would later resolve the ownership of the res between themselves. 199 F.2d at 696.  Like the insurance companies in John Hancock and Aetna, in Kerrigan's Estate the plaintiff was the stakeholder who sought a determination of the claimant's rights.  Under these circumstances, the district court correctly determined that an interpleader would not have been proper because Schiller and Angst are adverse to each other.

However, the parties' adversity does not dispose of the jurisdictional question.  If an intervenor's entry in the case can be supported by ancillary jurisdiction, diversity of citizenship between the intervenor and the other parties to the litigation is unnecessary.  See generally 7C Charles A. Wright et al., Federal Practice and Procedure § 1917 (1986); 3A James W. Moore, Moore's Federal Practice ¶ 19.34 (2d ed. 1995).  If, however, the non-diverse intervenor was an indispensable party under Rule 19 when the complaint was filed, the action must be dismissed.  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 111 S. Ct. 858 (1991) (per curiam); Constain Coal Holdings, Inc. v. Resource Inv. Corp., 15 F.3d 733 (7th Cir. 1994).  As the district court failed to make an explicit Rule 19 determination, we shall make an independent analysis.  See Sindia

7

<u>Expedition, Inc. v. Wrecked & Abandoned Vessel</u>, 895 F.2d 116, 121 (3d Cir. 1990).

## B. Rule 19 Analysis

Our analysis involves two steps: first, we must determine whether a party is necessary under 19(a); second, we must determine whether it is indispensable under 19(b). <u>Schulman v. J.P. Morgan Inv. Management, Inc.</u>, 35 F.3d 799 (3d Cir. 1994).

Rule 19(a) requires the joinder of a party who is subject to service of process and within the court's subject matter jurisdiction when:
> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
> > (i) as a practical matter impair or impede that person's ability to protect that interest or
> >
> > (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1) & (2).

Accordingly, we first consider whether complete relief can be accorded among those who are already parties in the receiver's absence. <u>See</u> <u>Sindia</u>, 895 F.2d at 121. Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought. <u>Id.</u> (quoting 3A <u>Moore's Federal Practice</u> ¶ 19.07-1[1] at 93-98 (2d ed. 1989)). Angst and the insurance companies would

8

not receive "hollow" relief without the receiver. As discussed above, the only issue between Angst, Royal and Kemper is whether Angst is entitled to proceeds as a named beneficiary under the contract. Schiller's interest in the litigation would theoretically not come into play until after Angst had received the proceeds, as he seeks to impose a constructive trust on them. The possibility that the successful party to the original litigation might have to defend its rights in a subsequent suit by the receiver does not make it a necessary party to the action. Sindia, 895 F.2d at 122. Therefore, Angst, Royal and Kemper would not necessarily be deprived of complete relief in the receiver's absence.

Notwithstanding a determination of complete relief, a party may still be necessary under subsection (a)(2) of the rule. We first analyze the case under section (i), to determine whether disposition of the action without the receiver will "as a practical matter impair or impede" its ability to protect his interest in the litigation. In order to do so, the effect of the federal judgment must have a "direct and immediate" effect on the state court proceedings. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 407 (3d Cir. 1993). "[I]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." Id.

As the Janney Court noted, under Pennsylvania law a party may be precluded from relitigating an issue if the issues are

9

identical, the parties are in privity and the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in a prior action. Id. at 399 n. 12 (citations omitted). Because Schiller would not have a full and fair opportunity to litigate the issue if he were not joined, state law would accord no preclusive effect to the federal court judgment. As such, his absence would not, as a practical matter, impair his interest. See also Schulman, 35 F.3d at 806 (discussing Pennsylvania law and issue preclusion for purposes of 19(b)).

However, the receiver's absence might subject the already existing parties to multiple obligations, as envisioned by subdivision (ii). In this case, Angst and the insurance companies are already parties to a state action being prosecuted by the receiver. If both actions proceed, the insurance companies will be asked to deposit the proceeds for the same insurance policies into two different escrow accounts. Subdivision(ii) addresses not only multiple or inconsistent obligations; "[t]his subdivision also helps to protect defendants from 'needless' multiple litigation." Sindia, 895 F.2d at 122 (citations omitted). Together with the fact that a federal action would not have a preclusive effect on the state action, the existence of a prior state action in this case would subject the already existing parties to "needless" multiple litigation. Under Rule 19(a), we need only find that the party's absence results in any of the problems identified in the rule. Estrella v. V & G Management Corp., 158 F.R.D. 575, 579 (D.N.J. 1994).

10

Accordingly, Schiller is a "party which must be joined" in the action pursuant to Rule 19(a).[3]

Because we determine that the receiver would have been a "necessary party" at the time the complaint was filed, but his citizenship would destroy diversity jurisdiction, we also must determine whether he would have been an "indispensable party." Under section 19(b), "the court shall determine whether in equity and good conscience the action should proceed among the parties before it . . . ." The Rule lists four factors to be considered, but does not accord a particular weight to any of them. "This must be determined by the court in terms of the facts of a given case and in light of the governing equity-and-good-conscience test." 7 Wright et al. § 1608.

In this case, the fourth factor listed in Rule 19(b), whether the plaintiff will have an adequate remedy if the action is dismissed, is dispositive. As discussed above, Angst will have an adequate remedy by way of the existing state court

_____

[3] Angst makes much of the fact that this federal action was filed one day before the state action which named him as a defendant. However, as the district court pointed out during the hearing, the November 15, 1994 complaint is a related proceeding to the receivership proceedings. Appellant's arguments to the contrary belie common sense. The nature of a receivership is such that the appointed individual represents the entity in all actions regarding its past obligations. David Schiller did not bring the November 15, 1994 state action because he personally has an interest in the insurance proceeds, but because the assets of the corporation he was appointed to manage are allegedly at stake. See Black's Law Dictionary 1268 (6th ed. 1990) ("[receiver is a] person appointed by a court for the purpose of preserving property of a debtor pending an action against him, or applying the property in satisfaction of a creditor's claim. . ."). Schiller was appointed a receiver to the professional corporation by order entered October 14, 1994.

11

action, which involves all of the parties he desires to have included in his federal action.

Angst has not presented any persuasive arguments as to why his case should not be heard in state court. In his brief, he implies that because the state court actions were assigned to the same state judge that handled the receivership proceedings, some sort of bias is operating against him. He also alleges that the receivership orders came about by way of wrongful ex parte actions. Again, these allegations simply do not comport with common sense. A more reasonable explanation of the state court's judicial assignment process is that all related cases are assigned to the same judge. With respect to appellant's allegations of ex parte conduct, appellant appears to misunderstand the nature of a receivership. A receiver is a court-appointed individual who is to act under the supervision of the court. Furthermore, no decisions made by the state court judge have affected appellant's substantive rights; the orders which he complains of require only that the insurance proceeds be deposited in escrow pending a substantive determination regarding their ownership. In the event that the state court were to make some sort of legal error with respect to the case, appellant could simply appeal. Under these circumstances, "equity and good conscience" urge us to affirm the district court's dismissal of the action.

IV.

We hold that the district court correctly declined to recognize an interpleader structure among the parties involved in

12

this case.  We also hold that because Schiller, the receiver, a non-diverse intervenor of right, was a necessary and indispensable party under Rule 19 when the complaint was filed, the action must be dismissed.  For the foregoing reasons, we will affirm the district court's June 27, 1995 order.